## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiff Edward Herrera ("Plaintiff") (Docket No. 20). Also before the Court is a Motion for Summary Judgment filed by defendant Ford Motor Company ("Defendant" or "Ford") (Docket No. 19). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearings calendared for February 14, 2022, and February 28, 2022, are vacated, and the matters taken off calendar.

### I.     Factual and Procedural Background

Plaintiff commenced this action in Los Angeles Superior Court on May 4, 2021. The Complaint, which alleges "lemon law" claims under California's Song-Beverly Consumer Warranty Act ("Song-Beverly" or the "Act") for breaches of implied and express warranties, arises out of Plaintiff's purchase of an allegedly defective vehicle. Defendant filed its Notice of Removal on June 9, 2021, alleging that this Court possesses diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

Plaintiff purchased a new 2017 Ford Explorer (the "Vehicle") from Star Lincoln Ford on December 26, 2017. The Total Sales Price for the Vehicle at the time of purchase was $71,264.88. The Total Sales Price for the Vehicle included $19,026.18 in negative equity for the trade-in of Plaintiff's 2016 Ford F-150. The Total Sales Price for the Vehicle included $550 in GAP insurance sold by the dealer at the time of purchase.

Plaintiff brought his vehicle into a Ford dealership one time during the first year of ownership, on December 13, 2018, stating that the battery needed to be jump started, but the technicians could not duplicate the concern. Although no documentation from that or any other service appointment during the first year Plaintiff owned the vehicle indicates it, Plaintiff in this litigation has asserted that he also complained about white smoke coming from the tailpipe. In April 2019, Plaintiff presented the Vehicle for a recall, which was performed under warranty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

Plaintiff again presented the Vehicle on October 31, 2019, because, according to Plaintiff, the battery required a jump start. Ford replaced the battery under its warranty. On February 18, 2020, after Plaintiff had driven the Vehicle 52,940 miles, Plaintiff presented the Vehicle to Star Ford because excessive smoke was coming out of the tailpipe, the Vehicle stopping or turning off by itself at one point, and other concerns. Star Ford replaced the turbo assemblies, components of the axles, and performed a recall under the warranty.

On July 20, 2020, with 59,330 miles on the odometer after approximately two-and-a-half years of ownership, Plaintiff presented the Vehicle to Antelope Valley Ford Lincoln stating, among other things, that the vehicle stalled on the freeway. Sometime after July 20, 2020, Plaintiff called Ford to complain about issues with the Vehicle. On August 19, 2020, Ford sent an email to Plaintiff stating, in part: "This correspondence serves as a confirmation that Ford Motor Company will offer to repurchase or replace your vehicle under the terms of the lemon law." Ford's August 19, 2020 e-mail requested documents so that it could calculate and formulate a formal offer. On or around September 11, 2020, Plaintiff received a letter from Ford entitled "Repurchase of 2017 Ford Explorer . . . ." Ford's September 11, 2020 letter states, in part: "Based on the documentation provided to us, Ford Motor Company offers to repurchase your vehicle under the terms of CA Lemon Law. This offer is being extended to you in an effort to keep you as a satisfied Ford Motor Company customer." Ford's September 11, 2020 letter set forth Ford's refund calculations and stated a total repurchase amount of $34,784.51. Plaintiff owed $9,610.08 under Ford's refund calculation due, at least in part, to the negative equity of $19,026.18 from his Ford F-150 that Plaintiff rolled into the contract.

Plaintiff did not accept the offer made by Ford in Ford's September 11, 2020 letter to Plaintiff. On September 22, 2020, Plaintiff sent an e-mail to Ford that he referenced as his "final offer to Ford", which offered the following: "All my payments and down payment returned to me. Just over $30,800. No negative and ford eats the rest. I will give my vehicle back and you can deal with the rest and payoff." Plaintiff's "final offer" to Ford was approximately $40,000 more than Ford's September 11, 2020 offer to Plaintiff. On November 6, 2020, Ford sent an e-mail to Plaintiff offering to re-open his request for repurchase and offered to seek a $2,500 waiver on usage. Plaintiff did not accept that offer.

## II.     Motion to Remand

In his Motion to Remand, which Plaintiff filed on January 13, 2022, Plaintiff contends that Ford's "conclusory statements . . . set forth in its Notice of Removal are insufficient to meet its burden of proving that removal was proper, and do nothing to establish that the amount in controversy requirement has been met." (Mot. to Remand at 2:24-26.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

    Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)).

    In attempting to invoke this Court's diversity jurisdiction, Defendant must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

    When determining the amount in controversy, the Court must assume that the allegations in the complaint are true and that a jury will return a verdict in the plaintiff's favor on all of the claims in the complaint. See Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original); see also Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d at 566 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Under this burden, the defendant must provide evidence establishing that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum] when federal jurisdiction is challenged. . . . [A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). "Conclusory allegations as to the amount in controversy are insufficient." Matheson, 319 F.3d at 1090–91.

"[A] shortcoming in a notice of removal concerning the amount in controversy is not jurisdictional, at least not until the moving party has an opportunity to correct any perceived deficiency in the notice." Academy of Country Music v. Continental Casualty Co., 991 F.3d 1059, 1068 (9th Cir. 2021). Unlike a lack of subject matter jurisdiction, a Plaintiff challenging a procedural deficiency must do so within 30 days after the filing of the Notice of Removal. See 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

Here, the Motion to Remand was filed well more than 30 days after the filing of the Notice of Removal, and although Plaintiff phrases his challenge as one related to subject matter jurisdiction, his arguments relate solely to his contention that Ford failed to satisfy its burden to establish the amount in controversy in its Notice of Removal. But Plaintiff never disclaims that he seeks more than $75,000.00 in this action, and in the many months since the filing of the Notice of Removal, Plaintiff stated in his Rule 26 initial disclosures that he seeks base damages of $71,264.88, plus incidental and consequential damages, a civil penalty of up to two times his actual damages, and attorneys' fees. See, e.g., Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (explaining that district courts may take into account a state law's authorization of treble damages in determining the amount in controversy). Under these circumstances, where Plaintiff did not challenge the sufficiency of the Notice of Removal's allegations concerning the amount in controversy within § 1447(c)'s deadline to do so, the Court has no difficulty concluding by a preponderance of the evidence that the amount in controversy exceeds § 1332's exceeds jurisdictional minimum. The Court therefore concludes that it possesses diversity jurisdiction over this action, and denies the Motion to Remand.

### III.   Motion for Summary Judgment

In its Motion for Summary Judgment, Ford asserts that it is entitled to judgment on Plaintiff's express warranty claim because it made a prompt pre-litigation offer to repurchase Plaintiff's Vehicle as required by Song-Beverly. Ford additionally contends that Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

implied warranty claim fails because Plaintiff has no evidence that the Vehicle suffered a defect during the term of the implied warranty and Plaintiff suffered no damages. Ford alternatively seeks partial summary judgment on Plaintiff's prayer for civil penalties because Plaintiff cannot establish as a matter of law that Ford acted willfully, as required for a Song-Beverly civil penalty.

   A.   **Express Warranty**

Plaitiff's claim for breach of express warranty is brought pursuant to, which states:

> If the manufacture or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of repair attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.
>
> (A)   In the case of replacement, the manufacturer shall replace the buyer's vehicle with a new motor vehicle substantially identical to the vehicle replaced. The replacement vehicle shall be accompanied by all express and implied warranties that normally accompany new motor vehicles of that specific kind. The manufacturer also shall pay for, or to, the buyer the amount of any sales or use tax, license fees, registration fees, and other official fees for which the buyer is obligated to pay in connection with the replacement, plus any incidental damages to which the buyer is entitled under Section 1794, including but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.
>
> (B)   In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer installed items installed by a dealer or the buyer, and including any collateral charges such as sales or

Case 2:21-cv-04731-PA-MAR Document 34 Filed 02/24/22 Page 6 of 11 Page ID #:1563

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

> use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.
>
> (C)   . . . When restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity.

Cal. Civ. Code § 1793.2(d)(2)(A)-(C). Thus, in order to prevail on his Song-Beverly claims against Ford, Plaintiff must prove that (1) his vehicle had defects that affected the use, value or safety of the vehicle that Ford could not repair to conform to the applicable warranty after a reasonable number of repair attempts, and (2) assuming Plaintiff can prove his vehicle was not repaired after a reasonable number of repair attempts, that Ford did not promptly offer to repurchase or replace Plaintiff's vehicle.

In his Opposition to Ford's Motion for Summary Judgment, Plaintiff contends that Ford did not provide him with compliant offer to repurchase because Ford's offer included improper deductions for the negative equity from Plaintiff's prior vehicle and GAP insurance, was not prompt, failed to include incidental or consequential damages, and was conditioned on the condition of the Vehicle.

This Court, and others within the Central District, have previously rejected efforts to include forgiveness of negative equity in Song-Beverly repurchase offers. Gonzalez v. Ford Motor Co., No. CV 19-652 PA (ASx), 2019 WL 6122554, at *7 (C.D. Cal. Oct 23, 2019); see also Rivera v. Ford Motor Co., No. CV 18-7798 DSF (PJWx), 2020 WL 1652534, at *4-*5 (C.D. Cal. Feb. 10, 2020); De Leon v. Ford Motor Co., No. CV 18-7975 PSG (FFMx), 2019 WL 7195325, at *7 (C.D. Cal. Nov. 13, 2019). As the Court explained in Gonzalez:

> The Song-Beverly Act states the manufacturer "shall make restitution in an amount equal to the actual price paid or payable to the buyer" Cal. Civ. Code § 1793.2(d)(2)(B). Therefore, the starting point for a restitution calculation is the "purchase price" of the vehicle. The itemized list of additional add-on charges does not

Case 2:21-cv-04731-PA-MAR Document 34 Filed 02/24/22 Page 7 of 11 Page ID #:1564

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

include the amount to pay off prior debt owed on a trade-in vehicle that exceeded the value of the trade-in. Further, the purpose of restitution is to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." Francisco v. Emeritus Corp., No. CV 17-02871, 2017 WL 7790038, at *5 (C.D. Cal. July 14, 2017). Restoring the status quo prior to the lease transaction does not reasonably include Ford paying off debt for a trade-in that Plaintiff was responsible to pay. Restoring the status quo requires placing Plaintiff in the same debt position he was in at the time he entered into the lease agreement, which was that he owed $5,041.00 more than the value of his trade-in vehicle. To require Ford to pay an additional $5,041.00 to Plaintiff would place Plaintiff in a better position than he was in at the time he entered into the lease. See, e.g., Daimler Chrysler Corp. v. Victoria, 153 N.H. 664, 668 (S. Ct. N. H. 2006) (finding on summary judgment that "purchase price" under New Hampshire's similar lemon law statute does not include negative equity); Holzhauer-Mosher v. Ford Motor Co., 772 So. 2d 7, 10 (Fl. Ct. App. 2000) (finding on summary judgment that "purchase price" does not include negative equity under Florida's similar lemon law statute. "Customers should know that the return of a 'lemon' to the manufacturer may result in the return to the customer of any debt owed on a trade-in vehicle that exceeds its . . . value.").

Gonzalez, 2019 WL 6122554, at *7.

Courts have also rejected Plaintiff's arguments concerning reimbursement for GAP insurance because it is not a manufacturer-installed item. See Carillo v. FCA USA, LLC, 546 F. Supp. 3d 995 (C.D. Cal. 2021) ("As part of that purchase price, plaintiff agreed to pay $1,348.00 to Century Automotive Services, a third-party, for an "Optional Service Contract." Because the Song-Beverly Act excludes restitution for 'non-manufacturer items installed by a dealer or buyer,' this optional charge must be excluded from the purchase price of the vehicle for purposes of the restitution calculation."); Tovar v. FCA US LLC, No. CV 20-1473 AB (JPRx), 2021 WL 3468111, at *4 (C.D. Cal. Apr. 23, 2021); Rupay v. Volkswagen Group of Am. Inc., No. CV 12-4478 GW (FFMx), 2012 WL 10634428, at *5 (C.D. Cal. Nov. 15, 2012) ("[I]t is clear that the Song–Beverly Act permits Defendant to exclude the value of the third party service and GAP insurance contracts from its Repurchase Offer.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

      The Court also rejects Plaintiff's argument that Ford's offer was not prompt. The undisputed facts establish that Ford offered to repurchase Plaintiff's Vehicle on August 19, 2020, within one month after Plaintiff's July 20, 2020 service visit and subsequent complaint that the Vehicle could not be repaired and request that Ford repurchase it. The Court finds that Ford's offer to repurchase the Vehicle "prompt" as a matter of law. See Medrano v. Volkswagen Group of America, Inc., No. 2:12-CV-02198, at *3 (C.D. Cal. July 6, 2012) (finding 45 days between an initial request and an offer to repurchase or replace prompt); Dominguez v. American Suzuki Motor Corp., 160 Cal. App. 4th 53, 59 (2008) (finding six weeks between the plaintiff's first demand for repurchase or replacement and the defendant's offer prompt); see also Islas v. Ford Motor Co., No. EDCV 18-2221 GW (SPx), 2019 WL 10855294, at *7 (C.D. Cal. July 29, 2019) (rejecting Plaintiff's contention that a manufacturer has an affirmative duty to offer a replacement vehicle or repurchase before a consumer's request).

      Plaintiff also fails to identify any recoverable incidental or consequential damages that would render Ford's repurchase offer non-compliant. See Kirzhner v. Mercedes-Benz USA, LLC, 9 Cal. 5th 966, 982. 266 Cal. Rptr. 3d 346, 360 (2020) (explaining that incidental and consequential damages under Song-Beverly "would include the types of exemplar costs listed in the Act—i.e., 'repair, towing, and rental car costs'—because such costs 'result from' and are incurred 'incident to' the defect itself and the failure to repair the defect. . . . By contrast, Kirzhner would have incurred and paid registration renewal or nonoperation fees even if his vehicle had been defect-free and even if Mercedes had been successful in repairing the defects."). Because Ford's repurchase offer was "prompt" under Song-Beverly, Plaintiff's insurance and registration fees did not result from Ford's inability to repair the Vehicle.

      Finally, Plaintiff contends that Ford's conditioning its offer on Plaintiff returning the Vehicle in "acceptable" condition rendered the offer non-compliant. But California Civil Code section 1793.2(d)(2)(C) allows the manufacturer to reduce the amount of restitution paid by the manufacturer "by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Song-Beverly therefore allows the manufacturer to factor in the condition of the vehicle, and Ford's request that the Vehicle be in acceptable condition does not render the repurchase offer non-compliant. Moreover, the undisputed facts establish that Plaintiff rejected Ford's repurchase offer because of the financial terms of that offer, and his incorrect view that Ford was responsible for the negative equity from his prior vehicle. The Court therefore concludes that Ford's offer's inclusion of a reference to the condition of the Vehicle resulted in no harm to Plaintiff and did not render the offer non-compliant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

### B. Implied Warranty

Song-Beverly provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civil Code § 1792. The Act generally defines "consumer goods" to mean "any new product or part thereof." Cal. Civil Code § 1791(a). However, notwithstanding the general definition of consumer goods to mean "new" goods, "the obligation of the distributor or seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers . . . ." Cal. Civil Code § 1795.5. Under California law, the duration of an implied warranty for a consumer good "shall be coextensive with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Cal. Civil Code § 1791.1(c)

In the sale of vehicles, the implied warranty of merchantability "means that the goods 'pass without objection in the trade under the contract description,' and are 'fit for the ordinary purposes for which such goods are used.'" Brand v. Hyundai Motor Am., 226 Cal. App. 4th 1538, 1545, 173 Cal. Rptr. 3d 454, 459 (2014) (quoting Cal. Civil Code § 1791.1(a)). "[A] new car need not 'be perfect in every detail'; rather, its implied merchantability requires only that a vehicle be reasonably suited for ordinary use.'" Id. at 1546, 173 Cal. Rptr. 3d at 460 (quoting Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d. 929, 945 (C.D. Cal. 2012)).

Plaintiff's implied warranty claim fails because there is no evidence that the problems Plaintiff claims to have experienced with the Vehicle during his first year of ownership rendered the vehicle unfit for its ordinary use and could not pass without objection in the trade. The only problem Plaintiff documented in the service records is that Plaintiff reported to the dealer that the battery required a jump start on one occasion. The remaining issues with the Vehicle that conceivably rendered it unfit for its ordinary use occurred more than one year after Plaintiff's acquisition of the vehicle and therefore did not occur within the duration of the implied warranty. See Cal. Civil Code §§ 1791.1(c) & 1795.5(c). Plaintiff attempts to escape this result by relying on Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (2009), in which the California Court of Appeal explained that "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." Id. at 1304, 95 Cal. Rptr. 3d at 290-91. According to Mexia, in the case of latent defects, "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known." Id. at 1305, 95 Cal. Rptr. 3d at 291.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

      Importantly, Mexia involved appellate review of the trial court's granting of a demurrer. According to the Court of Appeal, the state of the pleadings prevented the trial court from determining that the alleged defect did not exist at the time of sale:

> At this stage of the case, of course, there is no evidence in the record one way or the other as to whether the alleged defects existed at the time of sale (or within the duration period); all we have are allegations that we must assume are true.  Although the evidence produced at later stages of the case could show that the corrosion was due to improper maintenance, it is also possible that Mexia can present evidence that the corrosion was due to a defect that existed at the time of sale but remained latent and undiscoverable for two years.  Resolution of the issue is necessarily dependent upon the facts and, if there be any conflict in the evidence, is a matter for a jury.

Id. at 1308, 95 Cal. Rptr. 3d 293-94.  Here, even if Plaintiff complained about smoke coming from the tailpipe soon after he purchased the Vehicle, Plaintiff has no evidence that the condition was caused by a latent defect rather than the normal wear and tear experienced by all vehicles.  Indeed, neither Plaintiff nor his expert witness have identified the cause of the Vehicle's problems.  Plaintiff has therefore failed to create a disputed issue of fact that the Vehicle was delivered with a latent defect, and, as a result, his claims relating to problems he discovered more than one year after taking delivery of the Vehicle are not covered by the implied warranty, which had a duration of not more than one year.  Defendant is therefore entitled to summary judgment on the implied warranty claim.

      **C.**     **Civil Penalties**

      Ford additionally seeks partial summary judgment on Plaintiff's claim for an award of Song-Beverly civil penalties because Plaintiff cannot establish the willfulness necessary for a penalty.  See Cal. Civ. Code § 1794(c) ("If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages."); id. § 1794(e)(2) ("If the manufacturer maintains a qualified third-party dispute resolution process which substantially complies with Section 1793.22, the manufacturer shall not be liable for any civil penalty pursuant to this subdivision.").  Here, the undisputed evidence is that Ford participated in a qualified third-party dispute resolution process, and not only did Plaintiff fail to oppose Ford's arguments in support of its partial summary judgment motion on the issue of civil penalties, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4731 PA (MARx) | Date | February 24, 2022 |
|---|---|---|---|
| Title | Edward Herrera v. Ford Motor Company | | |

there is also no evidence of willfulness.[1/]  The Court therefore concludes that Ford is entitled to partial summary judgment on Plaintiff's prayer for Song-Beverly civil penalties.

## Conclusion

For all of the foregoing reasons, the Court denies Plaintiff's Motion to Remand and grants Ford's Motion for Summary Judgment.  The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.

---

[1/]     In many circumstances, a party's failure timely oppose a motion may be deemed consent to the granting of the motion.  See Local Rule 7-12 ("The Court may decline to consider any memorandum or other paper not filed within the deadline set by order or local rule.  The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.").  However, consistent with Marshall v. Gates, 44 F.3d 722 (9th Cir. 1995), the Court will not grant a motion for summary judgment due to the non-moving party's failure to file an opposition.  Id. at 725 ("[W]e have held that a motion for summary judgment cannot be granted simply because the opposing party violated a local rule.") (citing Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993)).  Instead, the Court must still analyze the record to determine if any material disputed facts exist.  Id.